# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRAVIS JAMAL WALTON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-0931** |
| **DAMIL TOPPS, WALLY CUMMINGS, ROBERT CROW** | **SECTION "N"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915(e)(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On May 1, 2012, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

---

[1]766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2]Rec. Doc. No. 11. The plaintiff was sworn in prior to testifying. The hearing was digitally recorded.

# I.    Factual Background

## A.    The Complaint

The plaintiff, Travis Jamal Walton ("Walton"), is an inmate currently incarcerated in the Washington Parish Jail ("WPJ") in Franklinton, Louisiana.[3]  He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against WPJ Warden Demille Topps, Assistant Warden Wally Cummings, former Sheriff Robert Crowe, and Dr. Jerry Thomas seeking injunctive relief and monetary damages.

Walton alleges that the jail is overcrowded, with 40 inmates housed in a 24 person dorm. He also claims that some inmates sleep on the floor for weeks at a time without a mat or bedding. He complains that the jail does not provide cosmetics, and inmates are required to share toilet tissue.

Walton also alleges that flies and maggots come out of the floor drains and that hook worms are in and around the showers.  He also alleges that dust and black mold can be found on the walls and ceilings.

He also claims that inmates are not taken outside often enough.  He believes that the fire marshal is being paid off.  He further alleges that the food is served cold and is often burnt.  He also complains that there is no adequate medical staff and that he has been turned down for medical treatment.  Walton contends that all of this has caused him lower back pain and shoulder pain.

As relief, Walton requests that the living conditions be upgraded.  He also asks the Court to "[s]top fire marshall [sic] from being paid off so he can do his job."  He also wants the Court to contact the jail's head cook so food can be served hot.  He further suggests that the food should not be slid under the dirty rusty cell doors instead of through the hatches in the doors.  He also seeks an

---

[3]Rec. Doc. No. 1.

order directing that the guards stop harassing and threatening inmates. He would like to be taken outdoors more often. He seeks to have the jail get a law library for inmates to use. In addition, Walton seeks monetary damages for his pain and suffering due to sleeping on the floor at the jail.

**B.      The _Spears_ Hearing**

Walton testified that he is a 21-year-old pretrial detainee at the WPJ. He was arrested and placed in WPJ on March 24, 2010, on charges of home invasion and simple robbery. He is represented by a public defender and is awaiting trial.

He stated that WPJ is overcrowded, with 30 to 40 inmates housed in an area meant for 24. He claims that some inmates sleep on the floor of the day room, sometimes without any bedding. He also complains that the inmates stay indoors all day and are only taken outside about once a month. He further claims that the jail has limited law related books, but does not have books on the Constitution or statutes needed for inmates to research their charges and prepare a defense. Walton stated that he does have appointed counsel in his criminal proceedings, but under a broad interpretation, Walton wants to be able to do his own research.

Walton also complains that the medical care at WPJ is inadequate. He concedes that the prison provides the services of Dr. Jerry Thomas and Nurse Kim Brumfield. He complains that they do not treat inmates' complaints with "serious precautions." He indicated that Nurse Brumfield keeps a list of which inmates want to see the doctor when he is at the jail. He has seen Dr. Thomas twice for toe pain. He concedes that Dr. Thomas examined him both times and found nothing that he could see wrong with the toe. He complained that the pain medication Dr. Thomas gave him did not help. While he is still having problems with his toe, he has no other medical conditions or need for other treatment.

Walton also testified that he feels disrespected by the Warden and guards, whom he could not identify, because they tell inmates to shut up and threaten the inmates with pepper spray and taser guns. As an example, he explained that, when inmates are lined up in the hallway waiting for food, the guards tell them to shut up, and when they do not, they curse at them and threaten them. He also said the guards will threaten to turn off the televisions until inmates comply with their orders to do certain things. He also explained that in 2010, Warden Topps threatened to knock the smile of his face when Walton smiled at the Warden during an incident in the jail. He also complained that, in March or April of 2011, another unidentified guard threatened to spray him for talking back and another one used racial slurs.

Walton explained that he sued Warden Topps because the jail is unsanitary and the food is served cold. He also stated that he sent the Warden several grievance complaints and has received no responses. He also sued Assistant Warden Cummings, because no one is doing anything to improve the conditions of the jail. He named Sheriff Crowe as a defendant because he is in charge of everything and should not let the jail get so overcrowded.

As relief, Walton indicated that he seeks an order to have the jail sanitation upgraded to prevent staph infections, the food service improved, and to have the guards made to respect the inmates as men.

## II.      Standards of a Review for Frivolousness

Title 28 U.S.C. §§ 1915A and 42 U.S.C. §§ 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce*, 2 F.3d 114 (5th

Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

III.    **Analysis**

A.    **The Supervisory Officials**

Walton has named as defendants three supervisory officials at the WPJ, Warden Topps, Assistant Warden Cummings, and former Sheriff Crowe. He complains that these officials should not allow the guards to harass the inmates and should provide better conditions and a more sanitary food service.

Supervisory officials, like these defendants, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate at the prison allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196,

200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). A supervisory official may only be liable under § 1983 if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (citing *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976)); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120 (5th Cir. 1980). This personal involvement also must include a showing of deliberate indifference as set forth above.

Walton does not allege that these supervisory officials were present for, or personally involved in, any harassment by the guards, his medical care, or any of the alleged concerns he has about the jail conditions. Walton also has not alleged that he has suffered any injury as a result of any directive, supervised training or activity, or other policy set forth by the Sheriff which would create vicarious liability. *See Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

Instead, Walton appears to have named these officials, simply because their supervisory roles at the jail. Thus, his claims against Warden Topps, Assistant Warden Cummings, and Sheriff Crowe are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

Nevertheless, even if Walton could state a personal basis for liability against these defendants or identify a particular person who could be held liable under § 1983, his claims are still frivolous as set forth in the sections below.

## B.     Threats, Disrespect, and Improper Language

Walton complains that he feels disrespected by the guards at WPJ, because of their inappropriate threats and occasional racial slurs.[4]  The Court finds that these claims do not rise to the level of a constitutional violation.

An inmate's claims of verbal insults, threats and derogatory remarks are not cognizable under § 1983.  *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995).  The Fifth Circuit has stated that "'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" (citation omitted)  *Id.*; *accord Watson v. Winborn*, 67 Fed. Appx. 241, 241 (5th Cir. 2003); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Vessell v. Gusman*, No. 06-2294, 2006 WL 2067723, at *2 (E.D. La. July 19, 2006) (McNamara, J.) (citing *Calhoun*, 312 F.3d at 734; *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993)).  It also is well settled that "[c]laims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment. . . ." *Jackson v. Liberty County*, 860 F. Supp. 360, 363 (E.D. Tex. 1994).

In this case, Walton's allegations of verbal threats and disrespect do not rise to the level of a constitutional violation.  These claims should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

---

[4]The Court also notes for the reader that the claims arising from incidents occurring in 2010, or more than one year prior to Walton's filing of this complaint also are prescribed.  *See Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998); *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998); and *see Cooper v. Brookshire*, 70 F.3d 377 (5th Cir. 1995).

### C.    No Physical Injury Alleged

As mentioned throughout this report, Walton has not alleged that any of the WPJ conditions described have caused him a physical injury as required to recover monetary relief under § 1983. For this reason, Walton has failed to state a claim for which relief can be granted.

Under 42 U.S.C. § 1997e(e), an inmate cannot recover for "mental and emotional injury suffered while in custody without a prior showing of physical injury."  The United States Fifth Circuit Court of Appeals, in interpreting this provision, has held that the phrase "physical injury" in § 1997e(e) means an injury that is more than *de minimis*, but it need not be significant. *Alexander v. Tippah County, Miss.*, 351 F.3d 626 (5th Cir. 2003) (quoting *Harper*, 174 F.3d at 719 (quoting *Siglar*, 112 F.3d at 193 (where the Fifth Circuit first set forth its § 1997e(e) definition of physical injury)); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999).

In this case, Walton has failed to allege any physical injury or illness to support a recovery for monetary damages under § 1983.  As a result, his claims can be dismissed with prejudice for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e. Even if considered, however, Walton's claims arising from the conditions of his confinement are frivolous.

### D.    Prison Conditions

Walton complains that the living conditions in WPJ are unsanitary and overcrowded and that he received inadequate medical care.  His claims are frivolous.

As a pretrial detainee, Walton's constitutional claims arise under the Due Process Clause of the Fourteenth Amendment, which, like the Eighth Amendment, places a duty on the State to protect against harm to persons in its confinement.  *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.

1996). In this type of case, where the inmate alleges an "episodic act or omission" by jail officials, Walton must show that the official acted with deliberative indifference to his constitutional rights. *Id*., at 636 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. In applying this standard, the Court's have held that "the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." *Id*. (citing *Farmer*, 511 U.S. at 842 & n.8).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

*Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997)) ( citations omitted) (emphasis added).

### 1. Overcrowding

Initially, Walton complains that WPJ is overcrowded with 30 to 40 inmates housed in an area intended for 24 inmates. However, absent a showing that this condition constituted "punishment" of Walton as a pretrial detainee under the Fourteenth Amendment, "'[o]vercrowding of persons in custody is not per se unconstitutional.'" *Galada v. Payne*, 421 Fed. Appx. 460, 462 (5th Cir. 2011)

(quoting *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004)); *see also*, *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996). Walton has not made such an allegation here.

As is discussed in the following sections of this report, Walton has not established that any of the conditions he complains of violated his constitutional rights. More importantly, he has not alleged that any condition has been imposed upon him as punishment for the crime for which he is being held. Without this, his claims are baseless under the Fourteenth Amendment. *Hamilton*, 74 F.3d at 103. The mere increased number of inmates in a given area does not amount to a constitutional violation redressable under § 1983. His claims should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 2. <u>Inadequate Medical Care</u>

Walton complains about the medical care he received from Dr. Thomas for his toe pain. As discussed above, although the distinction is primarily one of formality, in order to determine whether a pretrial detainee's rights have been violated under the Fourteenth Amendment, the court applies an analysis identical to that applied in Eighth Amendment cases. *Hare*, 74 F.3d at 643. In doing so, like other Eighth Amendment claims, deliberate indifference by prison personnel to a prisoner's serious medical needs is actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).

"A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 440 Fed. Appx. 263, 264 (5th Cir. 2011). A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer*, 511 U.S. at 847; *see also Parrish*

*v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff' Dep't*, 306 F.3d 515 (7th Cir. 2002) (same).

Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104. This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials or prison doctors and healthcare providers in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.* Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993)).

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.* Further, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates, at a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza*, 989 F.2d at 193 ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply*

medical treatment would not support an action under Section 1983." (emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

In this case, Walton concedes that at his request Nurse Brumfield placed him on the list to be seen by Dr. Thomas and that he was seen each time a request was made. He also indicates that Dr. Thomas examined his toe on each occasion and was unable to determine what was wrong with the toe. The doctor even provided Walton with pain medication, which apparently did not ease Walton's discomfort.

Walton's representations do not indicate that he was denied constitutionally adequate medical care. Instead, he simply disagrees with the type of treatment provided by Dr. Thomas and was disappointed with the results. However, a doctor's decision whether to provide additional treatment and as to which medications to prescribe is a matter for medical judgment. *See Gobert*, 463 F.3d at 346. Mere error in the exercise of that medical judgment would not be sufficient to state an Eighth Amendment claim of intentional indifference. *See Samma v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012). In other words, the constitution does not guarantee a medical cure for the treatment provided to be constitutionally adequate. The law is clear that unsuccessful medical treatment does not gives rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

Walton has failed to allege a denial of medical care sufficient to state a claim under § 1983. His claims should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 3.    <u>**Unsanitary Living Conditions**</u>

Walton complains that the living conditions of the facility were substandard.  The conditions described by the plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation.  He does not allege a serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in the plaintiff's claims.

He complains of insects and dust or mold in the prison.  Such common sanitation problems alone, although admittedly unpleasant, do not amount to constitutional violations.  *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994); *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992); *Robinson v. Illinois State Corr. Ctr.*, 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex.1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir.1986)); *accord Benshoof v. Layton*, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); *Gates v. Cook*, 376 F.3d 323, 342 (5th Cir. 2004).  Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions."  *Talib*, 138 F.3d at 215 (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

In this case, none of Walton's allegations about the overall conditions at WPJ establish constitutional violations.  *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no Eighth Amendment violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); *Causey v. Allison*, No. 08CV155-RHW, 2008 WL

4191746, at *1 (S.D. Miss. Sept. 9, 2008) (no Eighth Amendment violation where prisoner claimed black mold was growing in the shower but "admits that he has had no medical problems resulting from the black mold"); *McIntyre v. Phillips*, No. 07-527, 2007 WL 2986470, at *2-4 (W.D. Mich. Sept. 10, 2007); *Eady v. Head*, No. CIVASA04CA0648 NN, 2006 WL 2663776, at *3 (W.D. Tex. Sept. 15, 2006) ("Going without a shower and being exposed to the foul smell of a backed-up shower for two days on two separate occasions does not show deliberate indifference to Plaintiff's basic human needs or constitute cruel and unusual punishment in violation of the Eighth Amendment.").

Walton does not allege that he has been punished, or that he has suffered any injury, other than inconvenience, as a result of the conditions of the jail. For the foregoing reasons, Walton's claims fall short of stating a constitutional violation, and this claim must also be dismissed as frivolous pursuant to § 1915, § 1915(e), § 1915A, and § 1997e.

### 4.    <u>Insufficient Supply of Bedding</u>

Walton also alleges that some of the inmates do not have mattresses or blankets to sleep for short periods of time. He does not allege that he himself is without a mattress or blanket. Nevertheless, even if he intended to do so, he has not alleged a substantial risk of serious harm from the lack of a bed or mattress.

The provision of bedding is within those matters committed to prison administrators' sound discretion. *Kot v. Matty*, No. 90-7644, 1991 WL 246906, at *2 (E.D. Pa. Nov. 15, 1991), *aff'd*, 980 F.2d 723 (3rd Cir. 1992). The federal courts have repeatedly held that the deprivation of bedding for a limited period of time is <u>not</u> per se unconstitutional. *See Grissom v. Davis*, No. 02-1916, 2003 WL 343248, at *2 (6th Cir. Feb. 12, 2003) (seven days without mattress, sheets or blanket was not

a deprivation of basic human needs and did not cause plaintiff to suffer serious harm); *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping without mattress or blanket for four days on a concrete slab in cell located ten feet from exterior door during winter did not deny plaintiff the minimal civilized measures of life's necessities); *Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress or blanket for two days was not unconstitutional when there was no evidence that inmate suffered any injury or adverse health consequences or that jail officials knew of and disregarded an excessive risk to his health and safety); *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress, pillow, sheets or blanket for four days, when plaintiff sought no treatment for any resulting medical condition or injury, was not unconstitutional).

As stated above, Walton alleges no serious harm or risk of serious harm, and the court can perceive none under the circumstances described by plaintiff arising from the lack of a mattress or other bedding.  *Carter v. Strain*, No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009) (citing *McAllister v. Strain*, No. 08-5174, 2009 WL 500560, at *2-3 (E.D. La. Feb. 25, 2009); *Desroche v. Strain*, 507 F. Supp.2d 571, 580-81 (E.D. La. 2007).  The Court reiterates that Walton does not allege that he was actually denied a mattress.

His claim as alleged is frivolous and fails to state a claim upon which relief can be granted under § 1983.  It must be dismissed pursuant to § 1915(e), § 1915A, and § 1997e.

### 5.     Insufficient Outdoor Exercise Opportunities

Walton also alleges that the inmates are not provided with adequate and consistent opportunities for outdoor exercise or recreation, which is made available only about once a month. This complaint also is frivolous and fails to state a claim.

Inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a per se constitutional violation." *Lewis v. Smith*, 277 F.3d 1373, No. 00-31371, 2001 WL 1485821, at *1 (5th Cir. Nov. 13, 2001) (Table, Text in Westlaw) (citing *Stewart v. Winter*, 669 F.2d 328, 336 n.19 (5th Cir. 1982); *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir.1977)); *accord Sampson v. Corr. Corp.*, No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009) (citing *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991); *Beck v. Lynaugh*, 842 F.2d 757, 762 (5th Cir. 1988); *Lato v. Attorney Gen.*, 773 F. Supp. 973, 978 (W.D. Tex. 1991)). "[W]hat is constitutionally required, however, is that [the prisoner] not be confined for long periods without the opportunity for regular physical exercise." *Lewis v. Smith*, 2001 WL 1485821, at *1 (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982), *amended in part*, *vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982)).

Thus, to succeed on a claim under § 1983 for lack of exercise, a prisoner must set forth facts sufficient to "support the existence of any health hazard under the specific circumstances involved." *Ruiz*, 679 F .2d at 1152; *accord Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001); *Ordaz v. Lynaugh*, 20 F.3d 1171, No. 93-4290, 1994 WL 144882, at *4 (5th Cir. Apr. 15, 1994) (Table, Text in Westlaw); *Green*, 801 F.2d at 771. The plaintiff must also allege an actual injury caused by defendant's acts. *See Brock v. Sparkman*, 101 Fed. Appx. 430, 431 (5th Cir. 2004) (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986)) (prisoner who had bumps and bruises from repeatedly hitting his head on bunk bed had no cognizable injury); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993) (excessive force claim dismissed as frivolous when prisoner suffered no injury); *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990) (claims properly dismissed when plaintiff alleged insufficient causal connection between defendants' conduct and the claimed assault,

and when plaintiff did not allege constitutional harm); *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 602 (5th Cir. 1988) (citing *Stachura*, 477 U.S. at 307) (§ 1983 is designed to compensate persons for actual injuries caused by deprivation of constitutional rights); *Jefferson v. City of Hazelhurst*, 936 F. Supp. 382, 386 (S.D. Miss. 1995) (To state a claim under § 1983, plaintiff must plead "a direct causal connection . . . without intervening factors, between the deprivation and some injury to plaintiff."). Walton has not alleged any such health issues.

Walton does not allege any constitutional violation arising from his recreational opportunities at WPJ. He does not allege that he was deprived of recreation for any significant time period or that he suffered any physical injury or violation of his constitutional rights of any kind as a result of the alleged limitations on exercise at OPP. *See Hernandez*, 522 F.3d at 560 (Inmate who alleged that he was deprived of outdoor and out-of-cell exercise for thirteen months while in lockdown and that he suffered muscle atrophy, stiffness, loss of range of motion, and depression failed to show either that he was placed at substantial risk of serious harm or that he suffered a serious illness or injury sufficient to constitute an Eighth Amendment violation.); *Ordaz*, 1994 WL 144882, at *4 (Plaintiff failed to state a constitutional violation resulting from denial of recreation when he failed to allege health impairment or physical injury.)

Walton fails to state a cognizable § 1983 claim. This claim must also be dismissed as frivolous and/or for failure to state a claim pursuant to § 1915, § 1915(e), § 1915A, and § 1997e.

**6.**     <u>**Cold Food/Unsanitary Serving Area**</u>

Walton complains that the food is often cold and overcooked. He also suggests that the manner of food service would be more sanitary through the hatch hole in the door rather than sliding

the inmates' trays under the door. These complaints also fail to state a non-frivolous claim under § 1983.

The Constitution mandates that detainees and inmates be provided "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Green*, 801 F.2d at 770 (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)) (footnote omitted); *see also Eason*, 73 F.3d at 1327 ("To comply with the Constitution, inmates must receive 'reasonably adequate' food."). Prisons are required to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *See French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied sub nom*, *Owens v. French*, 479 U.S. 817 (1986).

Walton does not allege that he has been denied adequate nutrition or that he has a dietary need that has not been met. Furthermore, without some showing of physical injury resulting from the food service practices or potential contamination of the food, he has no basis for bringing a suit under § 1983. *See Jackson v. Taylor*, No. 05-823, 2008 WL 4471439, at *5 (D. Del. Sep. 26, 2008). This claim must also be dismissed as frivolous and/or for failure to state a claim pursuant to § 1915, § 1915(e), § 1915A, and § 1997e.

## 7. <u>Inadequate Law Library</u>

Walton alleges that the prison is not adequately supplied with law books that would assist inmates in researching their criminal charges and defenses. This claim is also frivolous.

Prisoners have a First Amendment right of meaningful access to the courts through adequate law libraries or assistance from legally trained personnel. *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Dickinson v. TX, Fort Bend County*, 325 Fed. Appx. 389, 390 (5th Cir. 2009); *Sandoval v.*

*Johns*, 264 F.3d 1142, No. 00-41276, 2001 WL 822779, at *1 (5th Cir. June 29, 2001) (Table, Text in Westlaw); *McDonald v. Steward*, 132 F.3d 225, 230 (5th Cir. 1998); *Degrate v. Godwin*, 84 F.3d 768, 768-69 (5th Cir. 1996). However, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Vaccaro v. United States*, 125 F.3d 852, No. 96-60838, 1997 WL 574977, at *1 (5th Cir. Aug. 28, 1997) (quoting *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993)) (Table, Text in Westlaw); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

To state a claim that his constitutional right of access to the courts was violated, the inmate must allege and demonstrate that his position as a litigant was actually prejudiced. *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *Cochran v. Baldwin*, No. 05-20100, 2006 WL 2418945, at *1 (5th Cir. Aug. 18, 2006); *Smith v. Polunsky*, 233 F.3d 575, No. 00-40362, 2000 WL 1468717, at *1 (5th Cir. Sep. 5, 2000) (Table, Text in Westlaw); *Eason*, 73 F .3d at 1328. The inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351.

In this instance, Walton does not allege the essential elements of a First Amendment claim detailed above. He alleges that he needs access to better legal materials to do research in connection with his criminal proceedings in which he was represented by counsel. However, the fact that Walton is represented by counsel in his criminal proceeding satisfies the right of access to the courts as guaranteed by the Constitution and interpreted by the Supreme Court in *Bounds*. *Schrier v. Halford*, 60 F.3d 1309, 1313-1314 (8th Cir. 1995); *Mann v. Smith*, 796 F.2d 79, 83 (5th Cir. 1986);

*Morrow v. Harwell*, 768 F.2d 619, 623 (5th Cir. 1985). Any discontent with that representation could be presented to the court presiding over his criminal case.

Furthermore, Walton has not alleged any actual legal prejudice of the type required by *Lewis* that was caused by any action or omission at the jail. "[C]ausation is an element of a section 1983 claim; [defendants'] actions must have actually caused the deprivation . . . of which [plaintiff] complains." *Hart v. O'Brien*, 127 F.3d 424, 446 (5th Cir.1997), *abrogated in part on other grounds as recognized in Spivey v. Robertson*, 197 F.3d 772 (5th Cir. 1999); *accord Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000). In *Lewis*, the Supreme Court made clear that an inmate must suffer an actual injury to state a claim for denial of his right of access to the courts. Walton has made no such allegation here.

For the forgoing reasons, his claim concerning the inadequate law library at WPJ is legally frivolous and fails to state a § 1983 claim upon which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 8. <u>Fire Marshal Paid-off</u>

Without explanation, Walton suggests that the fire marshal is paid off which prevents him from doing his job at the prison. Under the broadest of readings, Walton seems to link this to the alleged overcrowding issue. Nevertheless, such a claim fails to present a redressable claim under § 1983.

As an initial matter, Walton has not alleged to whom at the jail this claim is directed. Section 1983, provides a federal cause of action against any <u>person</u>, who, acting under color of state law, deprives another of his constitutional rights. 42 U.S.C. § 1983; *see Will v. Mich. Dep't of St. Police.*, 491 U.S. 58 (1989). A plaintiff must identify both the constitutional violation and the responsible

person acting under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk Country v. Dodson*, 454 U.S. 312 (1981).  Walton has not specified against which of the four named defendants he intended to assert this claims.

Furthermore, even if he had specified an actor, these allegations fail to present a violation of Walton's constitutional rights as required for a suit under § 1983.  Walton's allegations of bribery are at best conclusory and are speculative of matters to which a prisoner would not be privy and which are not related to Walton's status as a prisoner.  By the acts alleged, he does not present any violation of <u>his</u> federal constitutional rights or that this alleged impropriety impacted his protected rights or property in any way.  *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997) (merely alleging a constitutional violation or making a conclusory allegation is insufficient under § 1983).

Instead, he simply states that the fire marshal is "paid off."  While this allegation, if true, may address criminal activity, there is no private right of action under § 1983 where the activity did not directly violate the plaintiff's constitutional rights.  *See Stern v. Epps*, No. 10-60662, 2012 WL 911889, at *3-4 (5th Cir. Mar. 19, 2012).  He has not alleged any facts sufficient to support a claim under § 1983.

This claim, even if urged against a particular defendant, is legally frivolous and fails to state a claim for which relief can be granted under § 1983 and should be dismissed pursuant to § 1915(e), § 1915A, and § 1997e.

## IV.    <u>Recommendation</u>

It is therefore **RECOMMENDED** that Walton's claims against Warden Topps, Assistant Warden Cummings, Sheriff Crowe, and Dr. Thomas brought under 42 U.S.C. § 1983 be

**DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this 20th day of July, 2012.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[5]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.